IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN MICHAEL SPLAWN,

                Petitioner,

       vs.

MATTHEW CATE, Secretary, California
Department of Corrections and
Rehabilitation,

                Respondent.

No. 2:10-cv-00121-JKS

MEMORANDUM DECISION

       Steven Michael Splawn, a state prisoner appearing through counsel, filed a Petition for

Habeas Corpus under 28 U.S.C. § 2254.  Splawn is currently in the custody of the California

Department of Corrections and Rehabilitation, incarcerated at the Corcoran State Prison.

Respondent has answered, and Splawn has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

       A Shasta County Superior Court jury convicted Splawn on one count of first-degree

burglary and one count of second-degree burglary under California Penal Code § 459.  Splawn

admitted allegations of four prior strikes, three prior serious felony convictions, and a prior

prison term.  In August 2007 the trial court sentenced Splawn to an indeterminate prison term of

twenty-one years to life.  The California Court of Appeal affirmed Splawn's conviction and

sentence in an unpublished decision,[1] and the California Supreme Court denied review on

---

[1] *People v. Splawn*, No. C056783, 2008 WL 4458950 (Cal. Ct. App. Oct. 6, 2008).

January 14, 2009.  Splawn timely filed his Petition for relief in this Court on January 14, 2010,

and his Amended Petition with leave of court on May 28, 2010.

The California Court of Appeal recited the facts underlying Splawn's conviction:

Sisters Sally Peterson and Linda Moore reside in Redding with Moore's live-in home care provider, Amber McDonald.  There are two buildings on the property, a large house in which the three live, and a small detached cottage in the back. The cottage has a kitchen, living area, bedroom, and bathroom but was used for storage.

McDonald also worked the night shift at Wal-Mart.  On June 18, 2006, she got home from work between 7:30 and 8:00 a.m. and discovered a broken window in the rear of the main house.  She called the police and went to the cottage once a Redding Police Department community service officer arrived.

One of the two doors to the cottage had no lock.  McDonald had last been in the cottage two or three days before she discovered the burglary.  According to the community service officer, based on what McDonald told him at the scene, the cottage appeared ransacked.

There were signs someone had been living or staying in the cottage: empty cups and bottled water were scattered about, plastic tubing and a bowl full of cigarette butts were on the bed, and a pair of jeans and a green shirt had been left in a laundry basket.  Also, a stainless steel travel mug, which had been stored in a cupboard, was by the bed and contained a small amount of what appeared to be wine from the cottage's refrigerator.

The officer next examined the main house.  A window at the rear of the house showed signs of forced entry.  The screen was cut and bent as if pried away, and was propped up against the outside of the house.  The lower pane of the window had been removed, making a hole large enough for a person to crawl through.  The glass in both the lower and upper panes had been shattered, and a hammer was found outside the window opening.  McDonald told the officer the hammer was from a tool box in the cottage.

The trays from a jewelry chest in the master bedroom had been removed.  The nightstands had been opened and their contents dumped on the bed.  In McDonald's room, DVD's had been left on her bed, and there were signs cabinets had been opened and items moved around.  Peterson and Moore lost a total of 40 to 50 pairs of earrings, rings, necklaces, a collection of women's watches, small pocket knives, and credit cards in the burglary.

The officer left 45 minutes to an hour after arriving.  McDonald then called her friends Sandra Brown and Debra Rowe to come over with a lock for the cottage door.  According to Brown, as they were installing the lock at the cottage, Rowe exclaimed that someone had jumped over the couch, said hi to her, and gone out the back door.

Brown ran outside and went around the cottage to the rear, where she saw a man slowly going toward the back of the property.  She said "hey," and the man

stopped and looked at her, then turned around and kept going.  Brown got within 10 feet of the man and started to chase after him, but stopped at Rowe's request.

At trial, Brown could only remember that the intruder was white, wore a baseball cap, and was about 20 pounds thinner than [Splawn] but had the same body type.  Brown could not say whether she would have been able to recognize the man if she had seen him again.  She might have told the police the man was six feet tall and in his early 20's.  After Brown and Rowe arrived to install the lock, McDonald went down to the cottage and noticed an open can of tuna that was not present when she was there with the police officer.  On her way back to the main house to call the police again, McDonald heard Brown scream.  McDonald ran toward the cottage and saw a man running out of the back of the cottage into the bushes.  She was about 25 feet from the man, whom she described as "short hair, medium height, skinny."  She did not see his face but believed he was white.

Neil Marwan went to the property that morning to board up the broken window.  After assessing the job for about 15 minutes, he returned to his shop to pick up materials, and then went back to the house.  Marwan walked around the side of the main house and saw a woman having a conversation with a man by the cottage.  The man looked at Marwan and started to run toward a chain link fence at the back of the property. Marwan chased the man, getting no closer than 150 feet.

At trial, Marwan described the person as a white man with brown hair and an average build, around five feet 10 inches tall, and wearing jeans, a T-shirt, and a backwards baseball cap.  The man's hair was long enough to poke out from his hat.  The "thirtyish" man escaped from Marwan after going down a hill.

Latent fingerprints were found on two DVD's in the main house and on the stainless steel travel mug in the cottage.  The prints on the DVD's were determined not to be [Splawn's], but the print on the travel mug was [Splawn's].

[Splawn] was booked into the Shasta County jail on an unrelated matter on June 24, 2006.  Over [Splawn's] objection, the court allowed testimony from the booking sergeant at the jail that jail records showed [Splawn] possessed a yellow metal woman's watch, a brown watch, a yellow metal chain with a charm, a white metal ring, and a black string with a cross when he was booked into the jail.  None of the items were known to be stolen when they were returned to [Splawn] upon his July 1, 2006, release.[2]

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition Splawn raises four grounds:  (1) insufficiency of the evidence to convict; (2) the trial court erroneously admitted evidence of a watch possessed by Splawn at the time he was booked into jail; and (3) the trial court incorrectly relied upon Splawn's silence in

---

[2] *Id.* at *1-2.

denying his motion for a new trial; and (4) the trial court failed to properly consider mitigating factors in refusing to strike prior "strike convictions."  Respondent contends that Splawn's fourth ground is procedurally barred.  Respondent does not assert any other affirmative defense.[5]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the

---

[5] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011)

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412 (alteration added).

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[10]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing

---

directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[15]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[16] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[17] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[18]

---

[15] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[16] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[17] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[18] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

IV.  DISCUSSION

Ground 1:  Insufficiency of the Evidence

Splawn contends that there was insufficient evidence introduced at trial to support the

finding that he committed burglary.  The California Court of Appeal rejected Splawn's position:

> [Splawn] contends there is insufficient evidence to support either burglary
> conviction.  He argues that while the fingerprint evidence shows he was in the
> cottage at some point, no evidence ties him to the break-in at the main house or to the
> items stolen from there, and there was no credible evidence of a theft from the
> cottage. We disagree.
>
> In determining whether the evidence supports a conviction, we review "the
> whole record in the light most favorable to the judgment" and decide "whether it
> discloses substantial evidence . . . such that a reasonable trier of fact could find the
> defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d
> 557, 578).  The question, then, " 'is whether, after viewing the evidence in the light
> most favorable to the prosecution, any rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v.
> Hatch* (2000) 22 Cal.4th 260, 272, italics omitted.)
>
> The appellate court resolves all conflicts in evidence and questions of
> credibility in favor of the verdict, and indulges every reasonable inference the jury
> could draw from the evidence.  (*People v. Autry* (1995) 37 Cal.App.4th 351, 358.)
> "In cases in which the People rely primarily on circumstantial evidence, the standard
> of review is the same." (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)
>
> [Splawn] relies on several cases finding fingerprint evidence insufficient to
> support a conviction.  They are readily distinguished.
>
> In *People v. Trevino* (1985) 39 Cal.3d 667, disapproved on other grounds in
> *People v. Johnson* (1989) 47 Cal.3d 1194, 1221, the defendant's thumbprint was
> found on a dresser drawer in the murder victim's bedroom.  (*Trevino*, at p. 696.)
> However, since the defendant had been a guest in the victim's home prior to the
> killing, and because the age of the thumbprint could not be determined, the trier of
> fact could only "speculate as to how and when the print was made." (*Id.* at pp. 696-
> 697.)  Here, [Splawn] was never a guest at the main house or the cottage, which was
> reserved for storage space.  It was clear from the evidence that [Splawn] left the
> fingerprint after breaking into the cottage within two or three days of the burglary of
> the main house.
>
> In *People v. Johnson* (1984) 158 Cal.App.3d 850 and *People v. Jenkins*
> (1979) 91 Cal.App.3d 579, the issue was whether the defendants' fingerprints on
> bottles and containers found in residences where the defendants were or had been
> present was insufficient to show the defendants' "constructive possession" of the
> contents of the bottles.  (*Johnson, supra,* 158 Cal.App.3d at pp. 854-856; *Jenkins,
> supra,* 91 Cal.App.3d at p. 584.)  The issue here is  not possession but identity—was

[Splawn] the person who broke into the cottage and main house and took items from both structures—and the fingerprint is powerful evidence identifying [Splawn] as the person who committed the burglaries.

Mikes v. Borg (9th Cir.1991) 947 F.2d 353 is a federal habeas corpus action where the victim was found dead in the basement of his burglarized fix-it shop. (*Id.* at p. 355.) The murder weapon was one of several turnstile posts that were part of a disassembled turnstile not accessible to the general public in the shop. (*Id.* at pp. 355, 357-358.) The victim had purchased the turnstile from a hardware store holding a "going-out-of-business sale" and stored it in his basement. (*Id.* at p. 357.) Defendant's fingerprints appeared on one of the turnstile posts. (*Id.* at pp. 355-356.) The Ninth Circuit Court of Appeals concluded the fingerprints could have been left on the posts while the posts were in the publicly accessible store prior to the victim's purchasing them. (*Id.* at pp. 358-359.)

*Borg* is not binding authority on California courts. (*People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1587.) It is also factually distinguishable from the instant case. Turnstiles are meant to be used by the public and thus are commonly found in public places, where they will be touched by the general public. However, the travel mug belonged to McDonald and was stored in a cupboard in the cottage, away from the public.

Finally, in *Birt v. Superior Court* (1973) 34 Cal.App.3d 934 (*Birt* ), Rodney McNutt returned to his home one night to find his lights on and a rental van parked on his grass. (*Id.* at p. 936.) Upon entering his home, McNutt discovered some of his possessions were missing and others were by the kitchen door. (*Ibid.*) Inside the van, McNutt found two men, who ran from the van and escaped. (*Id.* at pp. 936-937.) A sheriff's deputy who later examined the van found a cigarette lighter on the front passenger seat. (*Id.* at p. 937.) The female defendant's fingerprint was on the lighter. (*Ibid.*)

In finding the evidence insufficient to hold the defendant to answer for the burglary of McNutt's home, the reviewing court observed that the lighter was a "readily movable object" that was not shown to have been taken from McNutt's home, there was no evidence of the defendant's fingerprints in the home or on any of the stolen items, and the van was a rental van available to the public. (*Birt, supra,* 34 Cal.App.3d at p. 938.) The court concluded: "At most, the presence of [the defendant's] fingerprint on the lighter found on the front seat showed that, at some unknown time and place, she had been inside the van; but there was no direct or circumstantial evidence to indicate when and where that had been. Only by guesswork, speculation, or conjecture can it be inferred that [the defendant] was inside the van, or in the area, at the time of the McNutt burglary." (*Ibid.*)

Again, the difference with the instant case is that a lighter is an object generally carried on a person in public places and readily subject to being lost or touched by others. As we have already explained, the travel mug was stored away and isolated from the public, thus distinguishing *Birt.* Since the cottage was undisturbed when McDonald last checked it two or three days before the burglary,

the evidence also paints a much clearer picture regarding when [Splawn] touched the mug.

"'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 933 .) "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) The circumstantial evidence in this case, although, as the trial court concluded, "spare," is nonetheless more than sufficient to support an inference of guilt.

According to McDonald, she last visited the cottage two or three days before the burglary, and many items inside the cottage had been moved since then. [Splawn's] fingerprint was on the travel mug inside the cottage, which contained the remains of what McDonald and the investigating officer believed to be wine from the cottage refrigerator. The cottage showed signs of someone having lived there since McDonald's last visit-the wine in the travel cup, used water bottles strewn about, the presence of foreign clothes, and the bowl used as an ashtray. The fingerprint evidence thus strongly suggests [Splawn] entered the cottage through the unlocked door, lived there for some time after McDonald's last visit, and drank wine from the cottage refrigerator without the owner's permission.

This is substantial evidence of second degree burglary of the cottage. To convict the perpetrator of burglary, the People must establish he "entered the premises with the intent to commit a felony or theft." (*People v. Holt* (1997) 15 Cal.4th 619, 669.) Entering the cottage and drinking the wine from the refrigerator without the owner's express or implied consent established the necessary larceny to support the second degree burglary conviction. (See *People v. Martinez* (2002) 95 Cal.App.4th 581, 584-585 [unlawful entry into house and use of soap, water, and shampoo in shower sufficient evidence to support a burglary conviction].)

Circumstantial evidence also supports the first degree burglary conviction for the unlawful entry and theft from the main house. [Splawn's] presence in the cottage within no more than two or three days of the main-house burglary and his having already committed a burglary there identifies him as the person with the best opportunity and disposition to commit the main-house burglary. His presence in the cottage also afforded [Splawn] the opportunity to observe the main house and thus discern that it was unoccupied after McDonald left for her night shift at Wal-Mart.

The hammer, which McDonald told the investigating officer was from the cottage, was found next to the removed window pane and broken glass, raising a clear inference that the person from the cottage, [Splawn], committed the unlawful entry and burglary of the main house. [Splawn's] possession of a woman's watch when booked into jail is further evidence that he was in fact the person who took the women's watches, pocket knives, credit cards, and jewelry from the main house.

Although the eyewitness testimony was weak and equivocal regarding the identity of the intruder, our analysis does not change.

According to the probation report, filed a month after the trial, [Splawn] was 43 years old, five feet eight inches tall, blond haired, and weighed 170 pounds. As

[Splawn] points out, none of the eyewitness testimony describes the intruder in this manner.  However, no eyewitness specifically excluded [Splawn] as the intruder.  Rather, the witnesses expressed an inability to positively identify anyone as the intruder, did not see his face, or saw him from no closer than 150 feet away.  While Brown described [Splawn] in court as being 20 pounds heavier than the person she saw at the cottage, she also testified [Splawn's] body type "Looks about right."

> Whether the jury could have reached a different conclusion is not for us to decide.  (*People v. Daya* (1994) 29 Cal.App.4th 697, 702.)  We conclude the circumstantial evidence in this case, when taken together, provides substantial evidence supporting both convictions.[19]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[21]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[22]

Splawn misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing

---

[19] *Splawn*, 2008 WL 4458950 at *3-6.

[20] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[21] *Jackson*, 443 U.S. at 318-19.

[22] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether

there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction.[23]  In

this case, the California Court of Appeal determined that there was sufficient evidence of each

element of the crimes to support Splawn's conviction.  Although it might have been possible to

draw a different inference from the evidence, this Court is required to resolve that conflict in

favor of the prosecution.[24]  Splawn bears the burden of establishing by clear and convincing

evidence that these factual findings were erroneous;[25] a burden Splawn has failed to carry.  The

record before this Court does not compel the conclusion that no rational trier of fact could have

found proof of guilt, especially considering the double deference owed under *Jackson* and

AEDPA.  Splawn is not entitled to relief under his first ground.

Ground 2:  Erroneously Admitted Evidence

Splawn argues that the trial court erred in allowing into evidence the fact that he

possessed a woman's watch some six days after the burglary.  The California Court of Appeal

rejected Splawn's contention:

> [Splawn] claims the court erred in admitting evidence that he possessed
> several pieces of jewelry, including a woman's watch, when booked at the jail, a
> ruling he claims is contrary to Evidence Code section 352 and violated his
> constitutional rights to due process and a fair trial.  He is mistaken.
> We review rulings admitting or excluding evidence pursuant to Evidence
> Code section 352 under the abuse of discretion standard.  (*People v. Hillhouse* (2002)
> 27 Cal.4th 469, 496.)  We reverse only if the trial court's ruling was "'arbitrary,
> capricious, or patently absurd'" and caused a "'manifest miscarriage of justice.'"
> (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

---

[23] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995) (citing *Jackson*, 443 U.S. at 319).

[24] *See Jackson*, 443 U.S. at 326.

[25] 28 U.S.C. § 2254(e)(1).

In support of his claim, [Splawn] argues the probative value of the evidence was nonexistent, as the jewelry in his possession was not identified as stolen, nor could it be directly tied to the robbery. From this, [Splawn] reasons any inference that the jewelry in his possession when booked into jail was stolen "necessarily relied on circular reasoning" by relying on a presumption that he had in fact committed the burglary. [Splawn] further claims that admitting evidence he possessed the woman's watch without a foundation that it had been stolen effectively created a presumption that shifted the burden of proof to [Splawn], thus violating his rights to due process and a fair trial.

The relevance of [Splawn's] possessing a woman's watch at booking does not rely on circular reasoning or a presumption that he committed the burglary. As we previously discussed, the fingerprints on the travel mug established [Splawn's] presence in the cottage not long before the burglary, and the presence of the hammer from that cottage next to the window pane removed to allow illegal entry into the main house implicated [Splawn] in the illegal entry. Among the items stolen from the residence were a collection of women's watches. The evidence that [Splawn] possessed a woman's watch when booked into jail less than a week after the burglaries raised the inference that this watch did not belong to [Splawn], a man who already possessed another watch when he was booked into jail, but in fact was taken in the burglary of the main house.

Viewed alone, the evidence that [Splawn] possessed a woman's watch could not support a conviction. However, when viewed in the context of the other circumstantial evidence of his guilt, the evidence he possessed a woman's watch is probative of his guilt. It is one link in a chain of circumstances linking [Splawn] to the burglary of the main house. The court neither abused its discretion nor engaged in an unconstitutional presumption in admitting the evidence.[26]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[27] "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[28] "[T]he Due Process Clause does not permit the federal courts to

---

[26] *Splawn*, 2008 WL 4458950 at *6-7.

[27] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[28] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

12

engage in a finely tuned review of the wisdom of state evidentiary rules."[29]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."[30]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[31]  In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights.[32]  For example, the Supreme Court has barred the introduction of evidence in state-court criminal proceedings that violated the Fourth Amendment (search and seizure),[33] Fifth Amendment (confessions),[34] Sixth Amendment (Confrontation Clause),[35] and (right to counsel).[36]

------

[29] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[30] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[31] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[32] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[33] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[34] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[35] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[36] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352, permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[37]  California employs a similar rule.[38]

This Court notes that, although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[39] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[40]

Applying these standards in this case, it is clear that Splawn has failed to present an issue of constitutional magnitude.  Splawn is not entitled to relief under his second ground.

---

[37] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[38] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

[39] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[40] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing 28 U.S.C. § 2254(d)(1))).

Ground 3:  Denial of Motion for New Trial

Splawn argues that in denying his motion for a new trial based upon a claim of

insufficiency of the evidence, the trial court impermissibly considered the fact that he did not

testify or offer an alternative explanation for the presence of his fingerprint on the mug.  The

facts underlying this ground were summarized by the California Court of Appeal:

> In denying [Splawn's] motion for a new trial, the court made the following
> statement:   "The evidence concerning the travel mug, the Court takes as it was
> presented.  It was the victim's personal property, was by her account, as I recall the
> evidence, cleaned and put away.  And when seen elsewhere than she had put it, it
> turned out to have the fingerprint, *without any contrary evidence on that fact by Mr.*
> *Splawn.*  And it was circumstantially disturbed in conjunction with the crimes that
> were committed.  And in the same timeline, which the adjoining residence was
> burglarized.  *There is no evidence, direct or circumstantial, that would explain how*
> *Mr. Splawn['s] fingerprint, otherwise would appear on that glass.*" (Italics added.)[41]

The Court of Appeals considered and rejected Splawn's argument:

> [Splawn] contends the italicized portions of the court's analysis improperly
> inferred guilt from his decision to exercise his Fifth Amendment privilege and not
> testify, which he argues is an abuse of discretion.  We disagree.
> It is improper for a prosecutor to ask the jury to treat a defendant's silence as
> evidence of guilt.  (*Griffin v. California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106]
> (*Griffin* ).)  In ruling on a new trial motion, "an abuse of discretion arises if the trial
> court based its decision on impermissible factors [citation] or on an incorrect legal
> standard [citations]."  (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)  [Splawn]
> claims the denial of his new trial motion is an abuse of discretion because the
> inference of guilt from his silence applied the wrong legal standard and relied on
> impermissible factors.
> The court's statement clearly shows it was not drawing an inference of guilt
> from [Splawn's] silence but merely commenting on the state of the evidence.  *Griffin*
> does not prohibit a prosecutor from commenting on the state of the evidence or on
> the defense's failure to introduce material evidence.  (*People v. Turner* (2004) 34
> Cal.4th 406, 419.)  Likewise, the Fifth Amendment does not prohibit a trial court
> from making similar observations when ruling on the sufficiency of the evidence.
> The court's ruling was not based on an improper inference of guilt from
> [Splawn's] decision not to testify, but on a fair assessment of the evidence, including

---

[41] *Splawn*, 2008 WL 4458950 at *7.

15

[Splawn's] failure to produce evidence contradicting the evidence of his guilt.  This was not an abuse of discretion.[42]

*Griffin* made clear that the Fifth Amendment prohibits the prosecution from commenting upon a criminal defendant's failure to testify.  It is also clear that a trial judge has a constitutional duty to give a "no-adverse-inference" instruction if properly requested.[43]  On the other hand, no court, let alone the Supreme Court, has ever held that the Fifth Amendment privilege precludes a trier of fact, be it a court or a jury, from considering adverse to the defendant the failure of the defense to counter or explain testimony or evidence introduced.  In this case it is clear that the comments of the trial judge were directed towards the fact that the defense had never rebutted the inference that arose from the presence of Splawn's fingerprint on the mug and the fact that it had been moved from where it had last been placed by the owner—not to Splawn's failure to testify.  As the Ninth Circuit has held in the context of a *Griffin* violation by the prosecution:

> Taking the prosecutor's remarks in context, they were a response to defense counsel's closing argument, not a comment that was "manifestly intended to call attention to [Rodriguez–Preciado's] failure to testify."  *Beardslee,* 358 F.3d at 586.  Instead, the prosecutor's statements emphasized that the defense had never rebutted the inference raised by the trip receipts introduced by the prosecution to demonstrate that Rodriguez–Preciado had previously traveled to the area to meet with his co-conspirators.[44]

This Court can find no principled reason not to apply the same rationale to comments made by a trial court judge in ruling on a motion for a new trial based upon a claim of insufficiency of the evidence.  Applying that reasoning in this case, this Court cannot say that the

---

[42] *Id.*

[43] *Carter v. Kentucky*, 450 U.S. 288, 305 (1981).

[44] *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1132-33 (9th Cir. 2005); *see Beardslee v. Woodford*, 358 F.3d 560, 586-87 (9th Cir. 2004); *United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991).

decision fo the California Court of Appeal  was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" at the time the Court of Appeal rendered its decision or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."[45]

Splawn is not entitled to relief under his third ground.

Ground 4:  Denial of *Romero* Motion[46]

Splawn filed a *Romero* motion to strike some or all of his prior "strikes."  The trial court

denied Splawn's motion.  Splawn contends that in denying the motion the trial court failed to

consider all the mitigating factors and did not properly exercise its discretion.  The California

Court of Appeal rejected Splawn's arguments:

> [Splawn] remained silent in the face of the court's denial of his *Romero*
> motion, making no objection to either the decision or the reasoning given by the
> court.  As a result, his claim is forfeited on appeal. (*People v. Saunders* (1993) 5
> Cal.4th 580, 589-590 [failure to make timely assertion of a right before a tribunal
> having jurisdiction to determine it results in forfeiture of that right]; *People v. Walker*
> (1991) 54 Cal.3d 1013, 1023.)
>
> [Splawn's] claim also fails on the merits.  When faced with the decision
> whether a particular dismissal is in the furtherance of justice, the court must consider
> the following factors:  1) the nature and circumstances of the defendant's present
> felonies and prior strike convictions; and 2) the particulars of the defendant's
> background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148,
> 161.)  If, in light of these factors, the court finds that "the defendant may be deemed
> outside the scheme's spirit, in whole or in part," then the court should strike one or
> more of his strikes. (*Ibid.*)  However, such a case would be "'extraordinary,'"
> because the defendant ordinarily falls within the spirit of the "three strikes" law
> (Pen.Code, §§ 667, subds.(b)-(i), 1170.12)  "'once he commits a strike as part of a

---

[45] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also
Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[46] *People v Superior Court (Romero)*, 917 P.2d 497 (Cal. 1996).  A short-hand reference
to the procedure under California law in which a criminal defendant requests a trial court to
strike prior felony convictions for sentencing purposes.

long and continuous criminal record, the continuation of which the law was meant to attack' [citation]." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

The court correctly described its discretion to strike [Splawn's] prior strikes as less than the prosecutor's discretion to exercise leniency in charging. A sentencing court has only limited discretion to strike a prior felony conviction in the furtherance of justice. (*Romero, supra,* 13 Cal.4th at p. 530.) By contrast, a prosecutor has considerable discretion to exercise leniency through the charging function. (See *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 86-87.)

We view the court's statement as reflecting what is clear from the record, that [Splawn's] case is not so extraordinary that he is outside the spirit of the three strikes law. [Splawn's] record shows a career of crime starting in 1983 with few breaks in the intervening years. One of the instant convictions, the first degree burglary count, would qualify as [Splawn's] fifth strike. Although no one was physically harmed and most of the stolen property was found after the trial, [Splawn] nonetheless committed a nighttime burglary of a normally occupied residence after already committing a burglary of a cottage on the same property.

While the circumstances of past and current offenses can be relevant to a court's discretion to strike a prior conviction pursuant to *Romero,* in light of the limited nature of that discretion, the circumstances cited by [Splawn] could not justify a decision to strike the prior strikes. The court's analysis was fundamentally correct and the ruling was not an abuse of discretion.[47]

Respondent contends that Splawn is procedurally barred from raising this claim. This Court agrees. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[48] This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[49] Although the ultimate burden of proving adequacy of a state procedural bar is on the Respondent, once Respondent has "adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the

---

[47] *Splawn*, 2008 WL 4458950 at *8-9.

[48] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[49] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

burden to place that defense in issue shifts to the petitioner."[50]  Splawn may satisfy his burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."[51]  Here, Splawn did not respond to the Respondent's properly pled procedural-bar defense.  Therefore, he has not met his burden to controvert it.

Even if this Court were to reach the merits, Splawn would not prevail.  Splawn's entire argument is that the trial court in this case misapplied California law with respect to exercising its discretion to strike prior strikes under California's three-strikes law.  This is purely and simply a question of state law, beyond the purview of this Court in a federal habeas proceeding.[52]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[53]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[54]  This is

---

[50] *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

[51] *Id.*

[52] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

[53] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[54] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

especially true where the highest court in the state has denied review of the lower court's decision.[55]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[56]  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[57]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[58]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[59]  Splawn's arguments fall far short of satisfying this standard. Therefore, Splawn is not entitled to relief under his fourth ground.

---

[55] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[56] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[57] *Cooke*,131 S. Ct. at 863 (internal quotation marks and citations omitted).

[58] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[59] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

V.  CONCLUSION AND ORDER

Splawn is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[60]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[61]

The Clerk of the Court is to enter judgment accordingly.

Dated:  May 1, 2012.

      /s/ James K. Singleton, Jr.
          JAMES K. SINGLETON, JR.
          United States District Judge

---

[60] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[61] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.